OPINION OF THE COURT
Ernest Bianchi, J.
At a Mapp hearing held before me on May 1,1985, defendant moved to suppress a sum of United States currency seized from him by the police, upon his arrest for criminal sale of a controlled substance, on the ground that such seizure was the product of an arrest made without probable cause.
The hearing consisted of the testimony of only one People’s witness, Police Officer Timothy Dundas. Based on his testimony, which for the most part I find to be credible, I make the following findings of fact.
On January 4,1985 at about 10:00 p.m., Officer Dundas, while on assignment to the Street Narcotics Abatement Program of the 115th Police Precinct, was observing the defendant and others on the corner of Roosevelt Avenue and 81st Street from inside a van parked about a block away on 81st Street.
The officer was unable to estimate with certainty the distance from which he observed the defendant, stating it was from two to *357 three car lengths away and also from a distance of 150 to 200 feet away. The officer observed the defendant with the aid of binoculars, however, he was unable to specify the type or power of magnification of the binoculars used.
During the course of about one hour of observation, in addition to transactions between other persons, Officer Dundas observed three transactions with the defendant in which he was approached by one or more individuals with whom he spoke briefly and to whom he gave a white packet taken from his jacket pocket in return for some money. Two of the transactions involved individuals who approached the defendant on foot. In the third transaction, the defendant crossed the street to the side on which the officer was parked and made the same transaction with the passenger in a vehicle that had pulled up to the corner.
Following the third transaction, the vehicle pulled away and proceeded down 81st Street. Officer Dundas radioed to a backup unit which pursued and stopped the vehicle, according to Dundas, 2,000 feet or a block away. With his binoculars, he observed the backup team remove the individuals from the car, and also enter the car. One of the backup team members radioed back that he had recovered a white packet. The two individuals were arrested. No testimony was adduced as to what the white packet was found to have contained at the scene. The car was placed on the side of the street and locked. It was not impounded. No inventory search of the car was conducted. A search of the individuals revealed a clear plastic envelope containing marihuana. Officer Dundas and a second backup team approached the defendant who was still present on the corner and arrested and searched him, recovering $216 from his person. That money was vouchered and is the subject of this motion.
Officer Dundas testified that he had made 70 to 80 arrests in which white packets were involved.
On argument at the end of the hearing, the defense contention was that the mere transfer of white packets for money, an equivocal act as consistent with innocence as with guilt of any crime, did not give rise to the probable cause necessary to arrest the defendant. The People contended that the combination of three similar transactions involving white packets exchanged for money and the recovery of one of the packets gave rise to the necessary probable cause to arrest the defendant.
Based upon the facts found, the arguments of counsel, and the following conclusions of law, defendant’s motion is granted.
At issue here is whether the minimum showing necessary to establish probable cause has been met. Accepting as a fact that *358 the defendant made three transfers of white packets to various individuals for money, was this sufficient to provide probable cause to arrest the defendant and seize his property?
The Court of Appeals has said that where a transaction involves glossine envelopes, the “hallmark” of a drug transaction, that fact together with other indicia such as the transfer of money, exhibition of furtive or evasive behavior, or the context of such transaction occurring in a notorious drug marketplace, would qualify as a minimum showing for probable cause (People v McRay, 51 NY2d 594).
Although the ubiquity and frequency of drug transactions may soon dictate otherwise, the use of white packets as opposed to glossine envelopes has not yet been accorded the same significance, and now would still qualify as a “telltale” rather than “hallmark” of criminal activity. White packets, which are opaque, may contain any one of a number of legal items or substances.
In order for a white packet to acquire the same significance as other common drug packaging materials, there must be some further evidentiary fact or combination of facts which clearly bespeaks the presence of a drug transaction. It is not enough that the transfer of white packets occurs in an area rife with narcotics trafficking, or that the area has been targeted for special surveillance by narcotics officers, or that the narcotics officer has made numerous arrests involving the transfer of white packets.
There must be something more, relative to the packet itself, or to the background or acts of the alleged seller or buyer of the contraband. An example of this is the recent case of People v Bittner (97 AD2d 33), in which the Appellate Division, Second Department, reversed the order below which granted suppression, and remitted to the Supreme Court for further proceedings consistent with its opinion.
In Bittner (supra), the facts were somewhat analogous to those in the case at bar. An experienced narcotics officer and his partner were on a stakeout early one winter night in a notoriously drug-prone area. With the aid of binoculars, from a distance of 100 feet, they observed from within their undercover vehicle two separate transactions in which different individuals approached the defendants’ vehicle, had a brief conversation with defendant and his wife, and then received an unidentified object from defendant in exchange for money. Each individual who received the unidentified object held it up to his nose with two hands and appeared to be smelling it before turning over his *359 money. The officer testified that these two transactions had the apparent mark of a sale of angel dust. It was his experience, in about 60 arrests in that very area, most of which involved angel dust, that buyers of angel dust generally sniffed the drug before making their purchase.
In the instant case there was nothing unusual about either the packet, in terms of the visibility of any powdery substance, or the actions or backgrounds of the seller or buyers. Nothing indicated that a purchase of drugs had been made. The nature of the area as a drug-prone location was not developed. The background of the officer who testified, both as to his training and as to the specific outcome of his 70 to 80 arrests involving white packets was not developed. The ability of the officer to see what he saw was in question because of his imprecision as to estimates of distances and his lack of knowledge of the magnification of the binoculars he used.
The recovery of the white packet from the vehicle, an arguably improper seizure as to its occupants, might nevertheless have afforded the necessary probable cause to arrest the defendant if (1) the People had produced evidence that the packet contained what appeared to be a controlled substance, and (2) if the police had conducted an inventory search of the vehicle to rule out the presence of any other white packet which might have been innocent in nature and the one that was transferred to them by the defendant.
Absent these last two factors, and in view of the other aforementioned deficiencies, the repeated transfer of white packets in exchange for money did not constitute that necessary minimum which would give rise to probable cause to arrest. Accordingly, the defendant’s motion to suppress the quantity of United States currency seized from the defendant is granted.