232 N.J. Super. 507 (1989)
557 A.2d 713
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
JUAN GUERRERO, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 11, 1989.
Decided May 8, 1989.
*508 Before Judges MICHELS, LONG and KEEFE.
Laura A. Hook, Assistant Union County Prosecutor, argued the cause for appellant (John H. Stamler, Union County Prosecutor, *509 attorney; Laura A. Hook, of counsel and on the letter brief).
Julio Sanchez argued the cause for respondent.
The opinion of the court was delivered by MICHELS, P.J.A.D.
Pursuant to leave granted by this court, the State appeals from an order of the Law Division that granted a motion by defendant Juan Guerrero to suppress all evidence seized as a result of a search following the stop of a motor vehicle in which he was a passenger.
At approximately 3 p.m. on August 2, 1988, Detectives Cherry Stone-Tudela and James Krakowiecki and Officer Joseph Carratala, all of the Elizabeth Police Department, were in an unmarked vehicle conducting a surveillance of the downtown area near the Pioneer Homes housing projects, an area in which numerous drug arrests had been made previously. Detective Krakowiecki was a veteran officer with 16 years on the Elizabeth police force, one year of which had been spent with the Narcotics Division. Krakowiecki estimated that he had made more than 500 narcotics arrests. Detective Stone-Tudela was a nine-year veteran of the force, with one year spent with the Narcotics Division. She estimated that she had made more than 200 arrests for drug offenses in the Pioneer Homes projects area. Officer Carratala was a rookie officer.
The officers observed a white car that was driving along Magnolia Avenue stop at the curb in the center of the block. A young man who had been standing near a door to the Pioneer Homes projects approached the white car and exchanged a small packet for what appeared to the officers to be cash. The officers were approximately 175 feet from the transaction and were using binoculars.
The white car left the area. Detective Stone-Tudela testified that they declined to follow the white car because "[w]e had just established our position and what we usually do is wait for *510 a few cars to do the same thing, before we'll pull one over. To establish what is going on." In addition, Detective Krakowiecki stated that the white car was facing in the opposite direction from the police car and that a pursuit of the white car would have involved a safety risk.
Approximately five minutes after the white car had left the area, a blue Chevrolet Blazer with two occupants stopped in front of the Pioneer Homes projects, facing in the same direction as the police car. The young man that had approached the white car also approached the Blazer and exchanged with defendant, who was the passenger in the vehicle, a small packet in return for what the officers believed to be cash. The Blazer then drove away.
The officers pursued the Blazer, which stopped at a liquor store several blocks from the transaction. Defendant entered the liquor store and returned to the vehicle shortly thereafter, at which time the Blazer again drove away. Approximately one-and-one-half blocks from the liquor store the officers stopped the Blazer. Detective Krakowiecki testified that, as the police car pulled along side the Blazer to stop it, the passenger in the Blazer leaned over as if he was reaching under the front seat. After stopping the Blazer, the officers ordered the suspects out of the vehicle. Officer Carratala remained with the suspects outside the Blazer while Detectives Stone-Tudela and Krakowiecki searched the vehicle. Defendant testified that the detectives searched the vehicle thoroughly, inspecting the glove compartment and looking through various books that defendant had in the car. No contraband was found in the vehicle.
Detective Krakowiecki left the Blazer while Stone-Tudela continued to search the vehicle. Krakowiecki then searched defendant, patting him down and checking the pockets of defendant's shorts. Additionally, Krakowiecki instructed defendant to unbutton his shorts, whereupon Krakowiecki glanced inside defendant's shorts, both in front and behind *511 defendant. Defendant testified that, after the search proved fruitless, Krakowiecki "became very angry ... [and] started pacing back and forth." Krakowiecki then ordered defendant to remove his shoes, at which time a packet of marijuana was discovered in defendant's right shoe.
The trial court found that "there was probable cause to suspect that a narcotics transaction [had] occurred" and, therefore, that the stop of the vehicle was justified. Moreover, the trial court found that the officers had a right to search the automobile and to conduct a limited search of the vehicle's occupants. Nonetheless, the trial court held that the officers had no right to conduct a full search of defendant at the scene and that the search was "unreasonable" and "too intrusive." The trial court thereupon granted defendant's motion and suppressed the evidence seized. We disagree and reverse.
There cannot be the slightest doubt on this record that there was probable cause to believe that defendant had committed or was committing a crime. Probable cause to arrest or search an individual generally is defined as a well grounded suspicion or belief on the part of the searching or arresting officer that a crime has been or is being committed. See, e.g., Wong Sun v. United States, 371 U.S. 471, 479, 83 S.Ct. 407, 413, 9 L.Ed.2d 441, 450 (1963); State v. Alston, 88 N.J. 211, 231 (1981); State v. Bates, 202 N.J. Super. 416, 422-423 (App.Div. 1985); United States v. Green, 670 F.2d 1148, 1152 (D.C. Cir.1981). Thus, the police were justified in stopping the vehicle and searching defendant.
Furthermore, the warrantless search fell within the purview of the exception to the warrant requirement that is founded upon the exigency of the circumstances. Such a search is justified where, as here, the search is supported by probable cause and is necessary to prevent the disappearance of the suspect or of evidence, and where the circumstances fail to permit the searching officer sufficient time to obtain a warrant. See State v. Valencia, 93 N.J. 126, 136 (1983); State v. Sims, *512 75 N.J. 337, 355 (1978); State v. Malik, 221 N.J. Super. 114, 118-119 (App.Div. 1987).
Although the exception for exigent circumstances is to be "applied with caution," State v. Helton, 146 N.J. Super. 98, 100 (App.Div. 1975), aff'd o.b., 72 N.J. 169 (1977), the situation that confronted Detectives Krakowiecki and Stone-Tudela and Officer Carratala on August 2, 1988, plainly fit the definition of exigent circumstances. The trial court found, and case law generally supports, that the officers had probable cause to believe that defendant had engaged in a narcotics transaction when the officers observed the car in which defendant was a passenger stop at the curb in the middle of a block in an area under surveillance for suspected narcotics activity, and saw defendant exchange money for a small object with a man who had engaged in a similar transaction five minutes earlier. See, e.g., United States v. White, 655 F.2d 1302 (D.C. Cir.1981); People v. McRay, 51 N.Y.2d 594, 435 N.Y.S.2d 679, 416 N.E.2d 1015 (1980); People v. Zarzuela, 141 A.D.2d 788, 529 N.Y.S.2d 864 (1988), app. den., 72 N.Y.2d 927, 532 N.Y.S.2d 861, 529 N.E.2d 191 (1988); People v. Luccioni, 120 A.D.2d 617, 502 N.Y.S.2d 228 (1986), app. den., 68 N.Y.2d 771, 506 N.Y.S.2d 1055, 498 N.E.2d 157 (1986). Cf. State in Interest of L.M., 229 N.J. Super. 88 (App.Div. 1988), certif. den., 114 N.J. 485 (1989); State v. Bell, 195 N.J. Super. 49 (App.Div. 1984); State v. Williams, 117 N.J. Super. 372 (App.Div. 1971), aff'd o.b., 59 N.J. 535 (1971); P.L.R. v. State, 455 So.2d 363 (Fla. 1984), cert. denied, 469 U.S. 1220, 105 S.Ct. 1206, 84 L.Ed.2d 349 (1985). But see United States v. Jenkins, 530 F. Supp. 8 (D.D.C. 1981); People v. Colon, 128 Misc.2d 356, 490 N.Y.S.2d 100 (Sup.Ct. 1985). Additionally, the officers certainly had no time in which to procure a warrant to search defendant because the evidence very well could have been consumed, hidden or sold by the time such a warrant was issued. In our view, the officers acted reasonably in stopping the vehicle and in conducting a through search of defendant.
*513 The reasonableness of the officers' actions is underscored by other decisions in this State in which "exigent circumstances" have been used to justify a warrantless search. See, e.g., State v. Smith, 129 N.J. Super. 430 (App.Div. 1974), certif. den., 66 N.J. 327 (1974), in which an experienced police officer, on surveillance of an apartment out of which narcotics were suspected of being dispensed, observed a vehicle double park in front of the targeted building; saw the defendant, who the officer recognized as an individual with a record for drug offenses, exit the automobile and enter the building, and observed the defendant return to the rear seat of the car moments later, while "glanc[ing] around furtively." The police stopped the vehicle in which the defendant was riding, ordered the defendant out of the automobile and searched him, whereupon heroin was discovered in one of the defendant's shoes. We upheld the search on the ground that the exigent circumstances exception to the warrant requirement applied because the officers had probable cause to believe that the defendant had purchased narcotics and was in possession of them at the time of the stop, and a search warrant might have been obtained only by "risking a probability of the disappearance of defendant and destruction of the object of the search...." State v. Smith, supra, 129 N.J. Super. at 434. We there stated:
Some of the above cases proceed on the rationale that where the arrest and search occur close together in point of time and in reality constitute a single transaction, it does not matter if technically the search preceded the arrest. See State v. Doyle, 42 N.J. 334, 343 (1964). However, the fact remains that these cases are authority for the validation of a search made under exigent circumstances upon probable cause prior to arrest. We think that this is a more appropriate analysis and hold that a search without a warrant may be made if probable cause exists therefor and exigent circumstances are present which, as a practical matter, preclude expenditure of the time necessary to obtain a warrant because of a probability that the suspect or the object of the search will disappear, or both. The exigent circumstances theory better fits this type of case than does an analysis that attempts to fit a pre-arrest search into the category of a search incidental to an arrest. The latter approach seems to us to carry a built-in logical inconsistency. [Id., 129 N.J. Super. at 435].
See also State v. Malik, supra, 221 N.J. Super. 114, in which a urine specimen of the defendant, who had been arrested for *514 being under the influence of a controlled dangerous substance, was held admissible under the exigent circumstances exception to the warrant requirement, where the police reasonably had assumed that there was insufficient time in which to obtain a warrant because the presence of drugs in urine diminishes with the passage of time; State v. Miller, 159 N.J. Super. 552 (App.Div. 1978), in which a search of the residence of the defendant and his accomplice was upheld under, among other reasons, the exigent circumstances exception to the warrant requirement, where the searching officers had probable cause to believe that the weapons used in a violent crime might be found at the residence and where, despite that the defendant and his accomplice were hospitalized, there was insufficient time in which to procure a warrant because the defendant's cousin, who was the accomplice's live-in girlfriend, was not under arrest and could have disposed of the weapons; State v. Hannah, 125 N.J. Super. 290 (App.Div. 1973), certif. den., 64 N.J. 499 (1974), in which a reliable informant described to the police an automobile and its driver, who allegedly possessed narcotics and a firearm. The police observed the defendant in the general area where the suspect was alleged to be, and searched him. A preliminary search of the defendant revealed no evidence of a crime, but the defendant's car was impounded and the defendant was searched thoroughly, whereupon large quantities of heroin were discovered. Although we held that the search could not be upheld as incidental to an arrest because the arrest depended upon the search, we permitted the search under the exigent circumstances exception to the warrant requirement, reasoning that the mobility of both the automobile and, therefore, the defendant justified the warrantless search.
Here, probable cause existed for the police to believe that defendant had engaged in a narcotics transaction and that there was insufficient time in which to procure a warrant because of the likelihood that evidence on the defendant's person would be consumed, hidden or sold. As a result, the full search of defendant was justified despite the absence of a *515 warrant to conduct the search. Moreover, the actions of the officers, who used their experience and training to spot a criminal violation and to discover evidence of that violation, were eminently reasonable, which is, of course, the standard under the Fourth Amendment by which searches are to be judged. See Pennsylvania v. Mimms, 434 U.S. 106, 108-109, 98 S.Ct. 330, 332, 54 L.Ed.2d 331, 335-336 (1977); State v. Bruzzese, 94 N.J. 210, 217 (1983), cert. den., 465 U.S. 1030, 104 S.Ct. 1295, 79 L.Ed.2d 695 (1984); State v. Anderson, 198 N.J. Super. 340, 348 (App.Div. 1985), certif. den., 101 N.J. 283 (1985).
Accordingly, the order under review suppressing the evidence as a result of the search is reversed and the matter remanded to the trial court for further proceedings.