245 N.J. Super. 166 (1991)
584 A.2d 832
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
CASWELL FORESHAW, DEFENDANT-APPELLANT.
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ARTHUR BROWN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted November 27, 1990.
Decided January 8, 1991.
*168 Before Judges MICHELS and GRUCCIO.
*169 Wilfredo Caraballo, Public Defender, attorney for appellant Caswell Foreshaw (William Welaj, Designated Counsel, of counsel and on the brief).
Wilfredo Caraballo, Public Defender, attorney for appellant Arthur Brown (Keith A. McKenna, Designated Counsel, of counsel and on the brief).
James F. Mulvihill, Special Assistant Attorney General, Acting Camden County Prosecutor, attorney for respondent (Roseann A. Finn, Special Deputy Attorney General, Acting Assistant Camden County Prosecutor, of counsel and on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Tried to a jury, defendants Arthur Brown (Brown) and Caswell Foreshaw (Foreshaw) were convicted of (1) possession of a controlled dangerous substance, namely 502 grams of cocaine with 197 grams of pure free base drug in violation of N.J.S.A. 2C:35-10a(1) and (2) possession of said cocaine with intent to distribute it in violation of N.J.S.A. 2C:35-5a(1) and N.J.S.A. 2C:35-5b(1). The trial court merged defendants' convictions for possession of cocaine with their convictions for possession of cocaine with intent to distribute and committed each of them to the custody of the Commissioner of the Department of Corrections for 20 years with a 10 year period of parole ineligibility. In addition, the trial court assessed against each defendant a $30 Violent Crimes Compensation Board penalty, a $3,000 Drug Enforcement and Demand Reduction penalty, a $50 laboratory fee and suspended their driver's licenses for six months. Defendants appealed and we consolidated the appeals for purpose of this opinion.
Defendant Foreshaw seeks a reversal of his convictions or alternatively, a modification of his sentence on the following grounds set forth in his brief:
I. THE TRIAL COURT ERRED IN DENYING DEFENSE COUNSEL'S MOTION TO SUPPRESS.

*170 II. THE TRIAL COURT ERRED IN DENYING DEFENSE COUNSEL'S MOTION TO COMPEL DISCLOSURE OF THE CONFIDENTIAL INFORMANT.
III. THE TRIAL COURT ERRED IN DENYING DEFENSE COUNSEL'S MOTION FOR A JUDGMENT OF ACQUITTAL.
IV. THE SENTENCE IMPOSED WAS MANIFESTLY EXCESSIVE.
Defendant Brown also seeks a reversal of his convictions or alternatively, a modification of his sentence on the following grounds set forth in his brief:
I. THE TRIAL COURT ERRED IN RULING THAT ARTHUR BROWN'S FOURTH AMENDMENT RIGHTS WERE NOT VIOLATED BY THE SEARCH AND SEIZURE OF THE VEHICLE.
II. THE SENTENCE IMPOSED WAS MANIFESTLY EXCESSIVE.
We have carefully considered these contentions and all of the arguments advanced by both defendants in support of them and find that they are clearly without merit. R. 2:11-3(e)(2). Further comment is appropriate with respect to some of these contentions.

I.

The Trial Court Properly Denied Defendants' Motion to Suppress The Evidence
Defendants contend that the trial court erred in denying their motions to suppress the cocaine seized from their motor vehicle without a search warrant. Specifically, Brown argues that the police had sufficient time to obtain a search warrant before stopping the vehicle and, thus, the warrantless search was illegal. Foreshaw claims that the information provided by the confidential informant was deficient for constitutional purposes and was not a proper foundation for a warrantless search.
According to the State's proofs, at approximately 3:30 p.m. on the afternoon of August 27, 1987, Sergeant Gregory Buttari of the Camden County Prosecutor's Office received a tip from a confidential informant that a vehicle had departed the Camden area around 10:00 a.m. that morning for New York City to pick up cocaine and would be returning to Camden at approximately 4:30 p.m. The informant told the officer that the vehicle was a *171 silver or gray Eldorado Cadillac with New Jersey license plates and a spare tire mounted on the back. The informant also stated that three people would be inside the car  two Jamaican males and a Spanish female.
As a result of this information, Sergeant Buttari and Detective Cruz from the Camden City Police Department traveled north on the New Jersey Turnpike as far as Exits 5-6. At that point, they spotted a vehicle traveling southbound on the Turnpike matching the description of the vehicle received from the informant. Sergeant Buttari immediately made a U-turn and pursued the suspect car. As described by the informant, the vehicle was a silver-gray Eldorado Cadillac with a rear mounted spare tire carrying two black males and one Hispanic female. Sergeant Buttari followed the Eldorado to Exit 4 of the Turnpike. The vehicle left the Turnpike at Exit 4 and headed towards the City of Camden. At Exit 4, Sergeant Buttari and Detective Cruz were joined in the pursuit by Investigators Acevedo and Villegas. Sergeant Buttari and the other officers stopped the Eldorado at the Route 130  Airport Circle.
Sergeant Buttari identified defendant Brown as the driver, Sandra Jackson as the front seat passenger and codefendant Foreshaw as the rear seat passenger. After stopping the Eldorado, the officers removed the three occupants from the car and conducted a search of the vehicle. As a result of the search, the officers found a Garden State Racetrack bag under the driver's seat that contained 502 grams of cocaine. All three occupants of the car were then placed under arrest.

A.

The Search of the Automobile was Proper.
The fourth amendment protects the "right of people to be secure in their person, houses, papers and effects against unreasonable searches and seizures." U.S. Const. amend. IV. See N.J. Const. of 1947 art. 1, ¶ 7. The fourth amendment, however, does not forbid all searches and seizures. State v. *172 Bruzzese, 94 N.J. 210, 217, 463 A.2d 320 (1983), cert. denied sub nom. Bruzzese v. New Jersey, 465 U.S. 1030, 104 S.Ct. 1295, 79 L.Ed.2d 695 (1984); State v. Anderson, 198 N.J. Super. 340, 348, 486 A.2d 1311 (App.Div.), certif. denied 101 N.J. 283, 501 A.2d 946 (1985). "Rather it only proscribes those that are judicially deemed unreasonable." State v. Anderson, supra, 198 N.J. Super. at 348, 486 A.2d 1311. See State v. Bruzzese, supra, 94 N.J. at 217, 463 A.2d 320 (citing State v. Campbell, 53 N.J. 230, 233, 250 A.2d 1 (1969)). "Indeed the touchstone of the fourth amendment is reasonableness." State v. Bruzzese, supra, 94 N.J. at 217, 463 A.2d 320. Fourth amendment issues are complex and are "peculiarly dependent upon the facts involved." State v. Anderson, supra, 198 N.J. Super. at 348, 486 A.2d 1311. "Commonly, such constitutional issues involve no more than a seasoned `value judgment upon a factual complex rather than an evident application of a precise rule of law.'" Id. (citing State v. Funicello, 60 N.J. 60, 72, 286 A.2d 55, cert. denied sub nom. New Jersey v. Presha, 408 U.S. 942, 92 S.Ct. 2849, 33 L.Ed.2d 766 (1972) (Weintraub, C.J., concurring)).
"`Probable cause' for a search or arrest exists where a police officer has a well-founded suspicion or belief of guilt." State v. Wanczyk, 201 N.J. Super. 258, 266, 493 A.2d 6 (App.Div. 1985). "That suspicion or belief may constitute something less than the proof needed to convict and something more than a raw, unsupported suspicion." Id. In other words, "[p]robable cause to arrest or search an individual generally is defined as a well grounded suspicion or belief on the part of the searching or arresting officer that a crime has been or is being committed." State v. Guerrero, 232 N.J. Super. 507, 511, 557 A.2d 713 (App.Div. 1989). See State in the Interest of A.R., 216 N.J. Super. 280, 285, 523 A.2d 678 (App.Div. 1987).
"[S]earch warrants are strongly favored under the federal and state constitutions." State v. Malik, 221 N.J. Super. 114, 118, 534 A.2d 27 (App.Div. 1987). See State v. Bell, 195 N.J. Super. 49, 55, 477 A.2d 1272 (App.Div. 1984). "The warrant requirement *173 is predicated upon the premise that the necessity and reasonableness of a search can best be determined `by a neutral and detached magistrate instead of ... [a police] officer engaged in the often competitive enterprise of ferreting out crime.'" State v. Malik, supra, 221 N.J. Super. at 118, 534 A.2d 27 (quoting Johnson v. United States, 333 U.S. 10, 13-14, 68 S.Ct. 367, 369, 92 L.Ed. 436, 440 (1948)).
It is well settled, however, that there are several narrowly tailored exceptions to the warrant requirement. Id. See Horton v. California, 495 U.S. ___, ___ n. 4, 110 S.Ct. 2301, 2306 n. 4, 110 L.Ed.2d 112, 120 n. 4 (1990); State v. Bell, supra, 195 N.J. Super. at 55, 477 A.2d 1272 (holding "there is no requirement that the Government obtains a warrant at the first moment probable cause exists ... [t]he touchstone for determining the constitutionality of warrantless searches is one of reasonableness under the circumstances."). As our Supreme Court expressed in State v. Bruzzese, supra, 94 N.J. at 218, 463 A.2d 320:
Over the years, the United States Supreme Court has developed a number of circumscribed exceptions to the warrant requirement. E.g., New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) (automobile search incident to arrest of occupant); Chimel v. California, [395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969)] (limited area search incident to custodial arrest); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (investigatory "stop and frisk"); Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 1647, 18 L.Ed.2d 782 (1967) (search of premises in "hot pursuit" of fugitive); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925) (vehicle search in circumstances where impracticable to secure a warrant). These recognized exceptions are justified on the grounds of reasonableness.
In contrast to a search based upon a warrant which is presumed to be valid, a warrantless search is presumed to be invalid. State v. Valencia, 93 N.J. 126, 133, 459 A.2d 1149 (1983). In order to establish the validity of a warrantless search
the State must prove the overall reasonableness and validity of the search. The State must demonstrate that failure to secure a written warrant was justified, namely, that the search falls within a judicially cognizable exception to the warrant requirement. It must also show the existence of probable cause to search. State v. Young, 87 N.J. 132, 141-42 [432 A.2d 874] (1982); State v. *174 Patino, 83 N.J. 1, 7 [414 A.2d 1327] (1980); State v. Ercolano, 79 N.J. 25, 42 [397 A.2d 1062] (1979); State v. Sims, 75 N.J. 337, 352 [382 A.2d 638] (1978). [State v. Valencia, supra, 93 N.J. at 133, 459 A.2d 1149].
In sum, "[a] police officer may make a warrantless search where there is probable cause to believe evidence will be discovered and he has a reasonable belief that failure to act will result in destruction or removal of evidence." State v. Sims, 75 N.J. 337, 355, 382 A.2d 638 (1978).
Under the automobile exception established in Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), "the police can stop and search a moving or readily movable vehicle when there is probable cause to believe that the vehicle contains evidence of criminality." State v. Welsh, 84 N.J. 346, 352, 419 A.2d 1123 (1980). See California v. Carney, 471 U.S. 386, 390, 105 S.Ct. 2066, 2068, 85 L.Ed.2d 406, 412 (1985); State v. Martin, 87 N.J. 561, 567, 436 A.2d 96 (1981). "This exception applies to situations involving parked and unoccupied vehicles encountered by police in public parking lots or on city streets as well as to moving vehicles stopped on the open highway." State v. Martin, supra, 87 N.J. at 567, 436 A.2d 96. There are two reasons for the automobile exception. "`Besides the element of mobility, less rigorous warrant requirements govern because the exception of privacy with respect to one's automobile is significantly less than that relating to one's home or office.'" California v. Carney, supra, 471 U.S. at 391, 105 S.Ct. at 2069, 85 L.Ed.2d at 413. "Even in cases where an automobile [is] not immediately mobile, the lesser expectation of privacy resulting from its use as a readily mobile vehicle justifie[s] application of the vehicular exception." Id. Despite the breadth of the exception, "`[o]nly the prior approval of the magistrate is waived; the search otherwise [must be such] as the magistrate could authorize.'" California v. Carney, supra, 471 U.S. at 394, 105 S.Ct. at 2070, 85 L.Ed.2d at 415 (quoting United States v. Ross, 456 U.S. 798, 823, 102 S.Ct. 2157, 2172, 72 L.Ed.2d 572 (1982)). In short, "a warrantless search of a motor vehicle is justifiable ... where police have *175 probable cause to believe that the vehicle contains contraband or evidence of criminal activity." State v. Martin, supra, 87 N.J. at 567, 436 A.2d 96.
In the present case, it is clear that the police officers properly stopped and searched defendants' vehicle and that none of defendants' constitutional rights were compromised in the process. Contrary to Brown's argument, this case fits squarely within the automobile exception. After receiving the informer's tip, the officers properly corroborated the data provided. Just as the informer had predicted, the officers observed a silver-gray Eldorado bearing New Jersey license plates traveling southbound on the Turnpike. Inside the vehicle were two males and a female. As was also foretold, the vehicle exited the highway at Exit 4 and headed towards Camden. Once the officers established that the informant had been correct, they had probable cause to believe that defendants' car contained contraband and as such properly stopped and searched the vehicle. State v. Martin, supra, 87 N.J. at 567, 436 A.2d 96.
Furthermore, Brown is incorrect in his assertion that the officers had time to secure a warrant before stopping the vehicle. See State v. Bell, supra, 195 N.J. Super. at 54-55, 477 A.2d 1272. The police could not have obtained a warrant on the strength of the informer's tip for such did not establish the necessary probable cause. Probable cause only arose when the police conducted their own investigation and verified the informant's data. State v. Probasco, 220 N.J. Super. 355, 358, 532 A.2d 262 (App.Div. 1987). ("[T]he events that the police witnessed after defendant arrived on the scene corroborated much of the informant's information and thereby bolstered the veracity of all his information. The police could then properly use that information as a basis for probable cause to search defendant's automobile for drugs."). Judge Fluharty in the Law Division correctly dismissed Brown's argument to the contrary, stating:
And, of course, there would be those who would argue that they should get a warrant, but they'll clearly indicate that there's no requirement to get an *176 anticipatory warrant and that makes a lot of sense because without the test of the reliability of the factors there really isn't any basis to get a warrant. You can't go to a judge and say, Judge, I spoke to somebody that was reliable and this is what they told me but I can't support anything of what they told me. You don't get a warrant that way. What you do is you go out and you support by the reliable  by the totality of the circumstances the information that's supplied and then that gives credibility, credence, reliability if you will to the information supplied. Well, by that time you're out on the Turnpike you can't get a warrant at the point and that's why, very logically, you don't need anticipatory warrants in a situation like this.
Brown's reliance on State v. Williams, 168 N.J. Super. 352, 403 A.2d 28 (App.Div. 1979), is misplaced. In that case, we struck down a warrantless search of a parked automobile because the police had over two hours to obtain a warrant before the search. By contrast, in the instant case, probable cause did not arise until the officers were on the Turnpike and had an opportunity to assess the veracity of the informant's data. By that time it was no longer possible nor practical to obtain a search warrant.

B.

The Information Received from the Informant was Sufficient to Establish Probable Cause.
Foreshaw argues that the information supplied to the police by the confidential informant was insufficient to establish probable cause to stop and search the vehicle. We disagree. In Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the United States Supreme Court disapproved a technical, non-flexible approach to probable cause in favor of a totality of the circumstances analysis. Under the test laid down by the Supreme Court in that case, a magistrate must "make a practical, common sense decision whether, given all the circumstances ... including the `veracity' and `basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, supra, 462 U.S. at 238, 103 S.Ct. at 2332, 76 L.Ed.2d at 548. See State v. *177 Novembrino, 105 N.J. 95, 122 n. 11, 519 A.2d 820 (1987); State v. Probasco, supra, 220 N.J. Super. at 358, 532 A.2d 262.
Under the totality of the circumstances approach, "information given by an informant whose inherent reliability has not been shown may nevertheless be used to establish probable cause to obtain a search warrant if the informant's veracity is bolstered by the totality of the circumstances." State v. Probasco, supra, 220 N.J. Super. at 358, 532 A.2d 262. Just as the police can use an informant's data to secure a search warrant, such can be used to support a determination of probable cause in a warrantless search. United States v. Reyes, 792 F.2d 536, 539-540 (5th Cir.), cert. denied 479 U.S. 855, 107 S.Ct. 191, 93 L.Ed.2d 124 (1986). As was well stated in State v. Probasco, supra, 220 N.J. Super. at 358, 532 A.2d 262:
If the observations of police during an investigation may be used to bolster the veracity of an informant's information offered to establish probable cause to obtain a search warrant, such observations, where the circumstances are exigent, may similarly be used to bolster the veracity of an informant's information to establish probable cause to conduct a warrantless search.
It is clear that the police properly relied on the informant's data in establishing probable cause to conduct the search. As was noted above, the informant gave the police officers detailed information regarding the suspects and their vehicle. Subsequent investigation by the officers revealed that the informant was correct down to the smallest detail. Just as the informant predicted, defendants were riding in a silver-gray Eldorado with a rear spare tire mount and New Jersey license plates. Additionally, the suspect left the Turnpike at the exit indicated by the informant and headed toward Camden. These facts, when taken together with the officers' years of experience and their investigation of the matter, were sufficient to establish probable cause to search the car.
The decision in State v. Probasco, supra, and United States v. Reyes, supra, support the result reached here. In Probasco, we upheld a warrantless search of a motor vehicle based on an informant's tip. In that case, the police were told by an *178 informant of a certain person's suspected drug activity. The officers investigated the tip, found the individual as indicated by the informant, and stopped and searched the individual's car. Id. at 356-357, 532 A.2d 262. In support of the search, we explained:
The following information supplied by the informant was proved true by events that occurred in Bissey's presence before he undertook the search in question: defendant's car arrived at the address provided by the informant at the time he predicted, the vehicle was a maroon Ford, defendant was alone, he is a white male, he stayed only a short time in the building, he appeared to secrete something under the dashboard, he was armed and his driver's license confirmed that his name is David. Corroboration of all that information provided by the informant gave the police reason to believe that the informant knew defendant would be carrying drugs. The totality of these circumstances provided the police with probable cause to search defendant's automobile for drugs. [State v. Probasco, supra, 220 N.J. Super. at 359, 532 A.2d 262].
Similarly, in United States v. Reyes, supra, the Fifth Circuit upheld a warrantless search of a vehicle based upon an informant's data and subsequent police inquiry. In Reyes, an informant told police officers that a certain person was in possession of a large quantity of drugs and described the person and the situation in detail. Further police investigation revealed the informant's data to be correct. As a result the police stopped and searched the suspect's truck. United States v. Reyes, supra, 792 F.2d at 537-538. The court affirmed the denial of defendant's motion to suppress, noting:
Since Dixon was able to corroborate the informant's tip, the government was justified in believing the statement that cocaine was in the Blazer. Moreover, since Dixon personally observed Reyes check out of the motel and pack his belongings into the Blazer, the government could reasonably infer that the cocaine supposedly located in the motel room was transferred into the Blazer. Therefore, when all the information gathered from the informant and Dixon's personal observations is considered in the light of Dixon's extensive narcotic investigation experience, we conclude that the authorities had probable cause to believe contraband was inside the Blazer when Reyes exited the Holiday Inn parking lot. [United States v. Reyes, supra, 792 F.2d at 540].
In short, it is clear that on the strength of the informant's data and their own follow-up investigation, the police officers had probable cause to believe that contraband was present in defendants' vehicle. In light of the exigent circumstances *179 involved here, especially the inherent mobility of the vehicle, the police were justified in stopping and searching the car. Consequently, Judge Fluharty properly denied defendants' motion to suppress.

II.

The Trial Court Properly Denied Defendant Foreshaw's Motion To Disclose the Identity of the Informant
Foreshaw argues that the trial court erred in denying his motion to compel the disclosure of the confidential informant. Specifically, he contends that because the informant mentioned only Brown's name to the police, it can be inferred that the informant had relevant information as to the guilt or innocence of the parties and therefore, his identity should have been disclosed. We disagree.
The privilege to withhold the identity of an informer is deeply rooted in the common law. State v. Milligan, 71 N.J. 373, 380, 365 A.2d 914 (1976); State v. Oliver, 50 N.J. 39, 41, 231 A.2d 805 (1967). Today, the common law rule is codified in N.J.S.A. 2A:84A-28 and Evid.R. 36 which provides:
RULE 36. IDENTITY OF INFORMER
A witness has a privilege to refuse to disclose the identity of a person who has furnished information purporting to disclose a violation of a provision of the laws of this State or of the United States to a representative of the State or the United States or a governmental division thereof, charged with the duty of enforcing that provision, and evidence thereof is inadmissible, unless the judge finds that (a) the identity of the person furnishing the information has already been otherwise disclosed or (b) disclosure of his identity is essential to assure a fair determination of the issues. L. 1960, c. 52, p. 459, § 28 [N.J.S.A. 2A:84A-28].
"The purpose of the privilege is to encourage and secure a flow of vital information which can be had only upon a confidential basis." State v. Roundtree, 118 N.J. Super. 22, 30, 285 A.2d 564 (App.Div. 1971). See Grodjesk v. Faghani, 104 N.J. 89, 97, 514 A.2d 1328 (1986). In other words:
The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation *180 of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation. [Roviaro v. United States, 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1 L.Ed.2d 639, 644 (1957)].
"Although designated the informer's privilege, the privilege is not that of the informer, but of government `to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law.'" Grodjesk v. Faghani, supra, 104 N.J. at 97, 514 A.2d 1328 (quoting Roviaro v. United States, supra, 353 U.S. at 58, 77 S.Ct. at 626, 1 L.Ed.2d at 644). "Thus, it is generally agreed that the informer's privilege is well established, and its soundness cannot be questioned." State v. Milligan, supra, 71 N.J. at 383, 365 A.2d 914.
Despite the general acceptance of the privilege, it "is not absolute. Although at common law, disclosure of an informant's identity may have been within the absolute discretion of the government, it is now well settled that the privilege is subject to important limitations." Id. See Roviaro v. United States, supra, 353 U.S. at 60, 77 S.Ct. at 626, 1 L.Ed.2d at 644-645; State v. West, 145 N.J. Super. 226, 231, 367 A.2d 453 (App.Div. 1976), certif. denied 73 N.J. 67, 372 A.2d 332 (1977); State v. Roundtree, supra, 118 N.J. Super. at 31, 285 A.2d 564. "The privilege, which precludes disclosure of the identity of the informer, like all privileges, suppresses the truth. Hence, it must be construed to achieve, not thwart, a just result." Grodjesk v. Faghani, supra, 104 N.J. at 96, 514 A.2d 1328 (citations omitted). As Justice Pashman wrote in State v. Milligan, supra, the leading case on the issue:
For example, where the disclosure of the contents of a communication does not reveal the identity of the informer, the contents are not privileged. "Likewise, once the identity of the informer has been disclosed to those who would have cause to resent the communication, the privilege is no longer applicable." Nor will it apply where disclosure "is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." Roviaro v. United States, supra, 353 U.S. at 60-61, 77 S.Ct. at 627-628, 1 L.Ed.2d at 645; Scher v. United States, 305 U.S. 251, 59 S.Ct. 174, 83 L.Ed. 151 (1938); N.J.S.A. 2A:84A-28. Furthermore, the privilege is inapplicable where the informer is an essential witness on a basic issue in the case, State v. Infante, supra, 116 N.J. Super. [252] at 257 [282 A.2d 44 (1971)], where the informer is an active *181 participant in the crime for which defendant is prosecuted, State v. Oliver, supra, 50 N.J. [39] at 42, 45 [231 A.2d 805 (1967)]; State v. Roundtree, supra, 118 N.J. Super. at 31-32 [285 A.2d 564], where a defense of entrapment seems reasonably plausible, Roviaro v. United States, supra, 353 U.S. at 64, 77 S.Ct. at 629, 1 L.Ed.2d at 647; State v. Dolce, supra, 41 N.J. 422 [197 A.2d 185 (1964)], or where disclosure is mandated by fundamental principles of fairness to the accused. Roviaro v. United States, supra, 353 U.S. at 60, 77 S.Ct. at 626, 1 L.Ed.2d at 644-645; Cashen v. Spann, supra, 66 N.J. [541] at 553 [334 A.2d 8 (1975)]. See generally, 8 Wigmore, supra, § 2374 at 765-770; Annotation, supra, 1 L.Ed.2d at 2001. [State v. Milligan, supra, 71 N.J. at 383-384, 365 A.2d 914].
Under most circumstances, however, an informer's identity will be kept secret and will not be revealed for insignificant or transient reasons. State v. Milligan, supra, 71 N.J. at 383-392, 365 A.2d 914; Cashen v. Spann, 77 N.J. 138, 389 A.2d 969 (1978); State v. Oliver, supra, 50 N.J. at 42-48, 231 A.2d 805; State v. Morelli, 152 N.J. Super. 67, 377 A.2d 774 (App. Div. 1977); State v. Booker, 86 N.J. Super. 175, 206 A.2d 365 (App.Div. 1965). In State v. Dolce, 41 N.J. 422, 435-436, 197 A.2d 185 (1964), it was stated thus:
The public interest to be served by preserving the free flow of information of criminal activities, and by employing investigative agents who have, or acquire by deception or otherwise, access to persons engaged in such activities, should not be thwarted unless a showing is made that a defense such as entrapment is presented in good faith, with some reasonable factual support, and that the informer is a material witness necessary to the fair determination of the defense. If the rule were otherwise, a defendant by the mere naked allegation that he intended to rely on the defense could force the State to reveal the name and whereabouts of the informer and, on its refusal to do so, gain dismissal of the prosecution.
"A frivolous demand for the information, or one based only on an unsworn assertion that defendant was seduced into perpetrating the crime by the creative activity of police officers need not be recognized." State v. Dolce, supra, 41 N.J. at 435, 197 A.2d 185. Likewise, the identity of an informant need not "be revealed [where the informant is] no more than a witness to the criminal event." State v. Oliver, supra, 50 N.J. at 46, 231 A.2d 805. As was aptly summarized in State v. Milligan:
On the other hand, absent a strong showing of need, courts generally deny disclosure where the informer plays only a marginal role, such as providing information or "tips" to the police or participating in the preliminary stage of a criminal investigation. See, e.g., State v. Infante, supra, 116 N.J. Super. 252 *182 [282 A.2d 44 (App.Div. 1971)]; State v. Boone, 125 N.J. Super. 112 [309 A.2d 1] (App.Div. 1973), aff'd on other grounds, 66 N.J. 38 [327 A.2d 661] (1974). See also Jones v. United States, 326 F.2d 124 (9th Cir.1963), cert. denied, 377 U.S. 956, 84 S.Ct. 1635, 12 L.Ed.2d 499 (1964); Gulick v. State, 252 Md. 348, 249 A.2d 702 (Ct.App. 1969); Lopez v. State, 397 S.W.2d 76 (Tex.Cr.App. 1966) and generally Annot., supra, 76 A.L.R.2d (Supp. 1975) at 434-435; cf. People v. Goggins, supra, 34 N.Y.2d [163] at 170, 356 N.Y.S.2d [571] at 576, 313 N.E.2d [41] at 45 [(1974)]. Proof that the informer witnessed the criminal transaction, without more, is usually considered insufficient to justify disclosure. State v. Oliver, supra, 50 N.J. 39 [231 A.2d 805 (1967)]; State v. Booker, 86 N.J. Super. 175 [206 A.2d 365] (App.Div. 1965). In fact, where, as here, the role of the informer is confined to introducing the undercover agent to defendant, the majority of decisions have refused to compel disclosure of the informer's identity. [State v. Milligan, supra, 71 N.J. at 387-389, 365 A.2d 914 (footnote omitted)].
Both State v. Milligan, supra and State v. Booker, supra, are instructive here. In Milligan, the informant introduced a trooper to the defendant Milligan. Although the informant was present throughout the meeting and did participate in the discussions, he did not negotiate the sale. Following the initial meeting, the trooper, Milligan and the informer proceeded to Milligan's home. Once inside, the informer left the trooper and Milligan alone and the sale was completed outside of his presence. No other person was in the living room during the sale. The informer neither witnessed nor participated in the transaction, though he did enter the room shortly after the sale took place. Id. at 378-379, 365 A.2d 914. In holding that disclosure was not required, the Supreme Court wrote:
In this case, the defendant has made no special showing of how disclosure of the informer's identity would be helpful to his defense. Nor has he asserted a defense of entrapment which might also justify disclosure. Cf. Roviaro v. United States, supra, 353 U.S. at 64, 77 S.Ct. at 629, 1 L.Ed.2d at 647; State v. Dolce, supra, 41 N.J. 422 [197 A.2d 185]; State v. Roundtree, supra, 118 N.J. Super. at 32-34 [285 A.2d 564]. Instead, defendant merely denies selling drugs to the undercover agent. Essentially, he relies on a defense of mistaken identity. Most courts have found that the possibility that an informer's testimony might establish a defense of mistaken identity is too speculative to warrant disclosure. See, e.g., State v. Booker, supra, 86 N.J. Super. at 179 [206 A.2d 365]. On the other hand, some courts have considered this possibility an important factor in support of defendant's request. The instant case, however, is distinguishable from these latter cases in that here the illegal transaction allegedly took place in defendant's home and not "on the street." This fact severely weakens defendant's claim of mistaken identity. [State v. Milligan, supra, 71 N.J. at 390-391, 365 A.2d 914 (some citations omitted)].
*183 Likewise, in State v. Booker, we held that "the mere fact that the informer was present does not take him out of the protection of the statute. Such presence is only one fact to be taken into consideration with all of the facts in determining whether `disclosure of his identity is essential to assure a fair determination of the issues.'" State v. Booker, supra, 86 N.J. Super. at 179, 206 A.2d 365. In that case, the officer and the informant drove to a high drug area. Defendant met them and the officer completed a sale with defendant. On two separate occasions after the initial sale, the officer and the informant purchased drugs from defendant. Apparently, the informant did nothing more than introduce the officer to defendant and witness the transaction which took place. Id. at 178-179, 206 A.2d 365.
In determining whether the trial court has properly evaluated the issue, the appellate tribunal must decide whether the trial court abused its discretion in weighing the competing interests. State v. Milligan, supra, 71 N.J. at 384, 365 A.2d 914. In the final analysis, however, "[a] policy decision must be made and it must rest upon probabilities. In those terms the risk of loss to defendants is pure conjecture, while the loss to society in its effort to cope with crime would be real and substantial. The balance contemplated by Rovario must be struck in favor of law and order." State v. Oliver, supra, 50 N.J. at 48, 231 A.2d 805.
Turning to this case, it is obvious that there is no need for Foreshaw to learn the identity of the confidential informant and, as such, the trial court properly denied his motion to disclose. A review of the record reveals that the informant here was not at all involved in the events which took place. The informant did not contact defendants, accompany the police or participate in any meetings, sales or arrests. The informer only gave a detailed description of defendants and their vehicle to the police. Surely such action does not rise to the level of participation necessary for disclosure. This case bears no relationship *184 to Roviaro v. United States, supra, and State v. Roundtree, supra. In those cases, the informants played integral roles in the subject transactions and were actually present during the criminal activity. Here, by contrast, the informant only relayed incriminating information to the police and took no further part in the case. The matter sub judice is more akin to State v. Milligan, supra, and State v. Booker, supra, where the informants did nothing more than introduce the defendants to the police. In those cases, the courts clearly held that disclosure is not required where the informant plays a minor and limited role.
Foreshaw's contention that it can be inferred from the informant's mentioning of Brown's name to the police that he was in possession of exculpatory evidence is clearly without merit. Although it is true that the informant only identified Brown, such does not establish or even suggest Foreshaw's innocence. Foreshaw overlooks the fact that the informant gave a detailed description of him, his companions and their vehicle to the police. Moreover, and more importantly, because he did not accompany defendants or the police, the informant had no knowledge of the incriminating events. The informant could neither testify as to Foreshaw's knowledge or intent nor could he offer evidence on Foreshaw's behalf. Because Foreshaw's criminal activity took place outside of the informer's presence, the identity of the informer was irrelevant. In sum, "[Foreshaw] has made no special showing of how disclosure of the informer's identity would be helpful to his defense." State v. Milligan, supra, 71 N.J. at 390, 365 A.2d 914. As such, Judge Fluharty properly exercised his discretion by denying Foreshaw's motion to disclose the identity of the informant.

III.

The Trial Court Properly Denied Defendant Foreshaw's Motion for a Judgment of Acquittal
Foreshaw also argues that the trial court erroneously denied his motion for a judgment of acquittal. Specifically, he *185 claims that the State failed to present a prima facie case against him regarding the cocaine possession charge. We disagree. In State v. Reyes, 50 N.J. 454, 236 A.2d 385 (1967), our Supreme Court set forth the test to be applied when determining a motion to acquit. In the Court's words:
Treating first of the motion at the conclusion of the prosecution's evidence, the broad test for determination of such an application is whether the evidence at that point is sufficient to warrant a conviction of the charge involved. R.R. 3:7-6. More specifically, the question the trial judge must determine is whether, viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find guilt of the charge beyond a reasonable doubt. State v. Fiorello, 36 N.J. 80, 90-91 [174 A.2d 900] (1961), cert. denied, 368 U.S. 967, 82 S.Ct. 439, 7 L.Ed.2d 396 (1962). [State v. Reyes, supra, 50 N.J. at 458-459, 236 A.2d 385].
See State v. Franco, 153 N.J. Super. 428, 432-433, 379 A.2d 1292 (App.Div. 1977); State v. Gora, 148 N.J. Super. 582, 595-596, 372 A.2d 1335 (App.Div.), certif. denied 74 N.J. 275, 377 A.2d 679 (1977); State v. South, 136 N.J. Super. 402, 410, 346 A.2d 437 (App.Div. 1975), certif. denied 69 N.J. 387, 354 A.2d 315 (1976); State v. Gaines, 135 N.J. Super. 240, 247-248, 343 A.2d 118 (App.Div. 1975), aff'd o.b. 75 N.J. 83, 379 A.2d 1275 (1977). When reviewing a trial judge's determination of a motion to acquit, this court must "consider the State's proofs in light of the [Reyes] standard and ... determine therefrom how the motion should have been decided." State v. Gora, supra, 148 N.J. Super. at 596, 372 A.2d 1335; State v. Gaines, supra, 135 N.J. Super. at 248, 343 A.2d 118. On appellate review, no consideration is to be "given to any evidence or reasonable inferences to be drawn therefrom adduced on defendant's case." State v. Gora, supra, 148 N.J. Super. at 596, 372 A.2d 1335.
We are thoroughly convinced that there was sufficient credible evidence in this record from which the jury could find defendant guilty beyond a reasonable doubt of cocaine possession in violation of N.J.S.A. 2C:35-10a(1) and possession of cocaine with intent to distribute in violation of N.J.S.A. 2C:35-5a(1) and N.J.S.A. 2C:35-5b(1).
*186 "Criminal `possession signifies intentional control and dominion, the ability to affect physically and care for the item during a span of time, accompanied by knowledge of its character.'" State v. Brown, 80 N.J. 587, 597, 404 A.2d 1111 (1979) (citations omitted). "Possession can be either actual or constructive." State v. Shipp, 216 N.J. Super. 662, 664, 524 A.2d 864 (App.Div. 1987). See State v. Brown, supra, 80 N.J. at 597, 404 A.2d 1111; State v. Rajnai, 132 N.J. Super. 530, 536, 334 A.2d 364 (App.Div. 1975). "For constructive possession, which can be jointly shared by several persons, `physical or manual control of the proscribed item is not required as long as there is an intention to exercise control over it manifested in circumstances where it is reasonable to infer that the capacity to do so exists.'" State v. Shipp, supra, 216 N.J. Super. at 664, 524 A.2d 864 (quoting State v. Brown, supra, 80 N.J. at 597, 404 A.2d 1111). See State v. Rajnai, supra, 132 N.J. Super. at 536, 334 A.2d 364. "Proof of possession may be by circumstantial as well as direct evidence." State v. Rajnai, supra, 132 N.J. Super. at 536, 334 A.2d 364. "Possession need not be exclusive but may be jointly exercised by two or more persons." Id. Generally, "criminal possession may not be inferred from defendant's mere presence at the location where the contraband was found." State v. Shipp, supra, 216 N.J. Super. at 665, 524 A.2d 864. "To justify such an inference there must be `other circumstances or statements of the defendant tending to permit such an inference to be drawn.'" Id. (quoting State v. Brown, supra, 80 N.J. at 593, 404 A.2d 1111).
Here, the State presented ample evidence from which both physical and constructive possession could be inferred. According to the State's proofs, the officers discovered the cocaine, worth at least $50,000, under the driver's seat. The bag could only be reached from the rear seat because the electric motor under the driver's seat made front access impossible. Additionally, at the time of arrest, Foreshaw was sitting alone in the rear seat behind Brown who was driving the vehicle. On this evidence, a jury could confer that Foreshaw had physical possession of the bag due to his proximity to it. Additionally, a *187 jury could also infer that Foreshaw had constructive possession. Foreshaw was alone in the rear seat and had ready access to the bag. Moreover, the fact that a large, extremely valuable amount of cocaine was discovered in the passenger compartment leads to the inescapable inference that all of the passengers had knowledge of the drugs and were well aware of their existence. See State v. Palacio, 111 N.J. 543, 545 A.2d 764 (1988).
Finally, in our view, the jury verdict was not a manifest denial of justice under the law. R. 2:10-1. See State v. Carter, 91 N.J. 86, 96, 449 A.2d 1280 (1982); State v. Sims, 65 N.J. 359, 373-374, 322 A.2d 809 (1974). Thus, Judge Fluharty properly denied Foreshaw's motion for acquittal.

IV.

Defendants' Sentences Were Proper
Finally, we are satisfied that the sentences imposed upon defendants were neither illegal nor excessive. The sentences imposed upon each defendant complied with the provisions of the New Jersey Code of Criminal Justice and resulted from the trial court's thorough analysis and careful weighing of the relevant aggravating and mitigating factors. The need for punishment, deterrence and protection of society outweighs any reason advanced by defendants for the modification of their sentences. Furthermore, in our view, these sentences were neither manifestly excessive nor unduly punitive. They do not represent a miscarriage of justice or shock the judicial conscience. See State v. O'Donnell, 117 N.J. 210, 215-216, 564 A.2d 1202 (1989); State v. Jarbath, 114 N.J. 394, 401, 555 A.2d 559 (1989); State v. Ghertler, 114 N.J. 383, 387-388, 393-394, 555 A.2d 553 (1989); State v. Roth, 95 N.J. 334, 364-365, 471 A.2d 370 (1984).
Accordingly, the judgments of conviction and the orders of commitment under review are affirmed.