221 N.J. Super. 114 (1987)
534 A.2d 27
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
JESSICA MALIK, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted October 26, 1987.
Decided November 17, 1987.
*116 Before Judges PETRELLA, DREIER and BAIME.
Larry J. McClure, Bergen County Prosecutor, attorney for appellant (Ulrike M. Ziebarth, Assistant Prosecutor, on the letter brief).
Michael B. Ryan, attorney for respondent (Michael B. Ryan, on the brief).
BAIME, J.A.D.
We granted the State's motion for leave to appeal from an interlocutory order of the Superior Court, Law Division, suppressing evidence seized by the police following defendant's arrest. The novel question presented is whether the police may, without a search warrant, compel an arrested defendant to provide a urine specimen when they have probable cause to believe that she is under the influence of a controlled dangerous substance. Following an evidentiary hearing, the trial judge rendered an oral opinion in which he concluded that the evidence was obtained by reason of an unlawful search and seizure. We disagree and reverse.
The facts are not in dispute. At approximately 1:45 a.m. on November 15, 1986, a Port Authority patrolman observed a blue 1978 Chrysler Cordoba with an expired inspection sticker parked by a toll booth supervisor's office. The police officer approached the automobile and asked the driver to produce his license and registration. As the driver was complying with this request, the officer observed an open can of beer on the floor adjacent to the front seat. Both the driver and the front seat passenger were placed under arrest after the patrolman noticed that their eyes appeared "watery" and "bloodshot."
*117 At that point, defendant, the rear seat passenger, was asked to exit the vehicle. The officer observed that she also had "watery and bloodshot eyes" and that her pupils reacted sluggishly to light. In addition to these visual observations, the patrolman noticed that defendant's speech was slurred and she appeared somewhat belligerent. Based upon his experience as a police officer and a paramedic, he concluded that defendant was under the influence of a narcotic drug, probably a stimulant.
A cursory search of the automobile revealed a hand rolled cigarette in a box contained in the glove compartment. Upon searching defendant's pocketbook, the patrolman discovered a small amount of green vegetation, a manilla envelope containing two yellow pills, a pack of rolling paper, a brown glass vial with a "coke spoon" and a pipe.
Defendant was transported to police headquarters where she was detained for being under the influence of a controlled dangerous substance (N.J.S.A. 24:21-20b). Apparently, the arresting officer was under the misapprehension that any person arrested under the Controlled Dangerous Substances Act (N.J.S.A. 24:21-1 et seq.) was required to provide a urine specimen. Acting under that mistaken belief, the patrolman directed defendant to give a urine sample when she stated that she required the use of the ladies room. Accompanied by a female matron, defendant complied. The specimen was subsequently tested and the State sought to introduce evidence of the laboratory results.
As we have noted, the trial judge granted defendant's pretrial motion to suppress the urine sample. While finding that the evidence confiscated from the automobile and the pocketbook were constitutionally seized, the judge determined that the urine specimen was obtained in contravention of defendant's right of privacy under the Fourth and Fourteenth Amendments.

*118 I.
We commence our analysis with the fundamental principle that search warrants are strongly favored under the Federal and State constitutions. Illinois v. Gates, 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527, 546-547 (1983), reh'g den. 463 U.S. 1237, 104 S.Ct. 33, 77 L.Ed.2d 1453 (1983); State v. Valencia, 93 N.J. 126, 133 (1983); State v. Young, 87 N.J. 132, 141 (1981); State v. Welsh, 84 N.J. 346, 352 (1980); State v. Kasabucki, 52 N.J. 110, 116 (1968). The warrant requirement is predicated upon the premise that the necessity and reasonableness of a search can best be determined "by a neutral and detached magistrate instead of ... [a police] officer engaged in the often competitive enterprise of ferreting out crime." Johnson v. United States, 333 U.S. 10, 13-14, 68 S.Ct. 367, 369, 92 L.Ed. 436, 440 (1948). It is also well-settled, however, that this prevailing rule is subject to various narrowly drawn exceptions. See State v. Patino, 83 N.J. 1, 7 (1980); State v. Ercolano, 79 N.J. 25, 42 (1979); State v. Sims, 75 N.J. 337, 351 (1978). We are convinced that the seizure here falls within two judicially cognizable exemptions from the warrant requirement.
Initially, we are entirely satisfied that there existed sufficient exigent circumstances warranting the police demand for a urine specimen. Searches conducted under exigent circumstances have long been considered constitutionally permissible notwithstanding the absence of a warrant. See, e.g., Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); Johnson v. United States, supra; State v. DeLorenzo, 166 N.J. Super. 483, 488-489 (App.Div. 1979); State v. Miller, 126 N.J. Super. 572, 575 (App.Div. 1974); State v. Allen, 113 N.J. Super. 245, 251 (App.Div. 1970). This exception is applicable when the search is supported by probable cause and is necessary to prevent disappearance of the suspect or destruction or secretion of evidence and the circumstances are such, as a practical matter, to prevent expenditure *119 of the time necessarily consumed in obtaining a warrant. See State v. DeLorenzo, supra, 166 N.J. Super. at 489; State v. Smith, 129 N.J. Super. 430, 433 (App.Div. 1974), certif. den. 66 N.J. 327 (1974); State v. Hannah, 125 N.J. Super. 290, 294-295 (App.Div. 1973), certif. den. 64 N.J. 499 (1974).
In that context, we are fully convinced that the arresting officer "might reasonably have believed he was confronted with an emergency, in which the delay necessary to obtain a warrant, threatened `the destruction of evidence.'" Schmerber v. California, 384 U.S. 757, 770-771, 86 S.Ct. 1826, 1835, 16 L.Ed.2d 908, 919-920 (1966), quoting Preston v. United States, 376 U.S. 364, 367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777, 780 (1964). In our view, it was reasonable for the police officer to assume that the presence of drugs in urine gradually diminishes with the passage of time.[1]Cf. State v. Dyal, 97 N.J. 229, 239 (1984). The evidence is thus evanescent and may disappear unless prompt investigative action is taken. Given these facts, we conclude that the attempt to secure evidence of controlled dangerous substances was entirely reasonable and an appropriate consequence of the circumstances surrounding defendant's arrest.
Of course, we recognize that the officer's conduct was motivated in part by his mistaken belief that urine specimens are required in all cases involving arrests under the Controlled Dangerous Substances Act. Notwithstanding this uncontradicted fact, we note that the proper inquiry for determining the constitutional validity of a search and seizure is whether the conduct of the law enforcement officer was objectively reasonable, without regard to his or her underlying motives or intent. *120 State v. Bruzzese, 94 N.J. 210, 219 (1983), cert. den. 465 U.S. 1030, 104 S.Ct. 1295, 79 L.Ed.2d 695 (1984). The Fourth Amendment "proscribes unreasonable actions, not improper thoughts." Ibid. Hence, the fact that the arresting officer perhaps did not harbor the state of mind hypothecated by the reasons which provide the legal justification for his conduct does not vitiate the constitutional efficacy of the action taken. See Scott v. United States, 436 U.S. 128, 138, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168, 178 (1978), reh'g den. 438 U.S. 908, 98 S.Ct. 3127, 57 L.Ed.2d 1150 (1978).
We are also convinced that the seizure was reasonably incidental to a valid arrest. See, e.g., Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), reh'g den. 396 U.S. 869, 90 S.Ct. 36, 24 L.Ed.2d 124 (1969); United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); State v. Barnes, 54 N.J. 1, 9 (1969), cert. den. 396 U.S. 1029, 90 S.Ct. 580, 24 L.Ed.2d 525 (1970). Our courts have long recognized that when an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove weapons and evidence that might otherwise be hidden or concealed. Chimel v. California, supra, 395 U.S. at 762-763, 89 S.Ct. at 2039-2040, 23 L.Ed.2d at 694; Draper v. United States, 358 U.S. 307, 314, 79 S.Ct. 329, 333, 3 L.Ed.2d 327, 332 (1959); Agnello v. United States, 269 U.S. 20, 30, 46 S.Ct. 4, 5, 70 L.Ed. 145, 148 (1925). If the arrest is lawful, the search and seizure are not invalidated solely because the officers had adequate time to procure a warrant. State v. Doyle, 42 N.J. 334, 343 (1964). Of course, the right to arrest must pre-exist the search. Id. at 342. See also State v. Contursi, 44 N.J. 422, 433 (1965). So, too, the validity of the search depends upon the lawfulness of the arrest, Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142, 145 (1964), which, in turn, hinges upon whether the facts and circumstances within the knowledge of the officers and of which they have trustworthy *121 information are sufficient to warrant a prudent person in believing that the arrestee had or was committing an offense. Brinegar v. United States, 338 U.S. 160, 175-176, 69 S.Ct. 1302, 1310-1311, 93 L.Ed. 1879, 1890 (1949), reh'g den. 338 U.S. 839, 70 S.Ct. 31, 94 L.Ed. 513 (1949); State v. Burnett, 42 N.J. 377, 386 (1964); State v. Smith, 37 N.J. 481, 495 (1962), cert. den. 374 U.S. 835, 83 S.Ct. 1879, 10 L.Ed.2d 1055 (1963). It is also plain that "searches and seizures that could be made on the spot at the time of arrest may legally be conducted later when the accused arrives at the place of detention." United States v. Edwards, 415 U.S. 800, 803, 94 S.Ct. 1234, 1237, 39 L.Ed.2d 771, 775 (1974). "[O]nce the accused is lawfully arrested and is in custody, the effects in his possession at the place of detention that were subject to search at the time and place of arrest may lawfully be searched and seized without a warrant even though a substantial period of time has elapsed between the arrest ... and the taking of the property for use as evidence...." Id., 415 U.S. at 807, 94 S.Ct. at 1239, 39 L.Ed.2d at 778.
Applying these principles, we find that the request for and obtaining of defendant's urine at police headquarters was incidental to her lawful arrest. Defendant does not contend, nor could she, that her arrest was unsupported by probable cause. Indeed, the circumstances apparent to the officer at the time of the arrest were strongly suggestive of defendant's guilt. Further, the seizure of the evidence was not unduly remote in time or place. Although possible, it would have been highly impractical for the police to have demanded a urine specimen at the scene. We are thus convinced that the evidence was obtained as a normal incident to defendant's arrest.

II.
Although the issue was not addressed by the trial judge, we also find no merit in defendant's argument that the seizure *122 constituted an unwarranted invasion of her bodily integrity. In our view, a person arrested by the police with probable cause to believe that she has recently ingested a controlled dangerous substance has no federal constitutional right to prevent being required to give a urine sample. See Schmerber v. California, supra, 384 U.S. at 771-772, 86 S.Ct. at 1836, 16 L.Ed.2d at 920; State v. Dyal, supra, 97 N.J. at 238.
Of course, we recognize that the taking of urine constitutes a form of "personal intrusion." Fr. Order of Police v. City of Newark, 216 N.J. Super. 461, 471 (App.Div. 1987). See also Allen v. Passaic Cty, 219 N.J. Super. 352, 357 (Law Div. 1986). Nevertheless, urinalyses are commonplace in these days of periodic physical examinations and do not constitute an unduly extensive imposition on an individual's personal privacy and bodily integrity. Cf. Shoemaker v. Handel, 608 F. Supp. 1151, 1158 (D.N.J. 1985), aff'd 795 F.2d 1136 (3d Cir.1986), cert. denied ___ U.S. ___, 107 S.Ct. 577, 93 L.Ed.2d 580 (1986). Compare United States v. Montoya De Hernandez, 473 U.S. 531, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985); Cupp v. Murphy, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973); Schmerber v. California, supra, with Winston v. Lee, 470 U.S. 753, 105 S.Ct. 1611, 84 L.Ed.2d 662 (1985); Rochin v. California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952).
The issue must be considered in the context of the values involved. We fully recognize the importance of protecting the right of privacy, the right to be let alone. Nevertheless, it bears emphasis that defendant's purpose is to suppress proof which will likely convict her. Against that backdrop, we are entirely satisfied that the minimal intrusion into defendant's bodily integrity and privacy rights is far outweighed by the legitimate demands of law enforcement.
Accordingly, the order of suppression is reversed and the matter is remanded for trial.
NOTES
[1] Of course, we recognize that the presence of various drugs in a suspect's urine dissipates at different rates. We emphasize, however, that while the officer reasonably believed the defendant had ingested a controlled dangerous substance, he did not know the exact drug taken.