**Isaac SPARKS, Plaintiff–Appellee,**

v.

**Ronald STUTLER and Manuel Largaespada, Defendants–Appellants.**

**No. 95–1621.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 9, 1995.

Decided Dec. 5, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied Feb. 12, 1996.

**260**

Hamid R. Kashani (argued), Indianapolis, IN, David A. Nowak, Columbus, IN, for Isaac Sparks.

David L. Steiner, David Arthur (argued), Anthony W. Overholt, Office of Attorney General, Indianapolis, IN, for Ronald Stutler.

David L. Steiner, Anthony W. Overholt, Office of Attorney General, Indianapolis, IN, for Manuel Largaespada.

Before CUMMINGS, HARLINGTON WOOD, Jr., and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

During a prison shakedown, guards found a syringe in one of Isaac Sparks' shoes. They wanted to learn whether Sparks had been using drugs or whether, as he claimed, another inmate put the syringe in the shoe. They asked for a urine sample, which Sparks did not provide. He said that he could not; the guards did not believe this and conducted him to the infirmary, where Manuel Largaespada, the prison's physician, passed a catheter up Sparks' urinary tract and discovered that his bladder was indeed empty. A urine sample that Sparks provided several hours later tested positive for drugs. Discipline followed—as did this suit under 42 U.S.C. § 1983.

After a bench trial, the district judge concluded that Largaespada and Ronald Stutler, one of the guards, violated Sparks' rights under the fourth amendment (applied to the states by the due process clause of the fourteenth) by using a catheter to extract urine from his bladder. In response to the defendants' claim of official immunity, the district court conceded that "the legal effect of the involuntary catheterization of a State prisoner by a prison physician appears to be a question of first impression. Perhaps the nearest approach is to be found in the cases having to do with body cavity searches". And these cases have permitted guards to search prisoners' body cavities for drugs—both visually, see *Bell v. Wolfish*, 441 U.S. 520, 558–60, 99 S.Ct. 1861, 1884–85, 60 L.Ed.2d 447 (1979), and manually, see *Bruscino v. Carlson*, 854 F.2d 162 (7th Cir.1988). Nonetheless, because he deemed the prison's conduct to be "egregious" the district court rebuffed the claim of immunity and ordered the defendants to pay $5,000 in damages. We think this conclusion mistaken.

The fourth amendment protects privacy, and the Supreme Court held in *Hudson v. Palmer*, 468 U.S. 517, 526–30, 104 S.Ct. 3194, 3200–02, 82 L.Ed.2d 393 (1984), that privacy in one's surroundings is the thing most surely extinguished by a judgment committing someone to prison. See also *Johnson v. Phelan*, 69 F.3d 144 (7th Cir.1995). *Hudson* concluded that the eighth rather than the fourth amendment supplies the rules for searches and seizures following lawful conviction and confinement, and that under the eighth amendment the question is whether a particular intrusion reflects "calculated harassment unrelated to prison needs." 468 U.S. at 530, 104 S.Ct. at 3202. The district

judge concluded that the use of a catheter was unnecessary because the prison could have waited for nature to take its course. This sufficed for liability under the fourth amendment, whose "reasonableness" requirement is objective. *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The eighth amendment, by contrast, has a subjective component. *Farmer v. Brennan*, —— U.S. ——, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). This was the point of *Hudson*'s reference to "calculated harassment". The district court did not make any findings pertinent to the mental-state ingredient of the cruel and unusual punishments clause. So although we do not doubt that needless, yet humiliating or painful, medical procedures performed on prisoners can violate the Constitution, the findings in this case do not support a judgment under the eighth amendment.

"Privacy" is a variegated term, and *Hudson* did not require the Court to decide what interests prisoners retain in their bodies, as opposed to their surroundings. Suppose a prison decided to use the inmates as subjects in hazardous medical tests, without seeking their consent. Introducing drugs or biological material into prisoners could well violate their rights under the fourth amendment, even though the warden and medical staff acted for noble purposes and with a belief that the experiment was safe. *Vitek v. Jones*, 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980), holds that a criminal conviction does not obliterate a prisoner's interest in freedom from involuntary mental treatment. *Vitek* was decided under the due process clause; the fourth amendment, as the more explicit rule for searches of persons, cannot have lesser scope as applied to (other) medical procedures. Cf. *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Albright v. Oliver*, —— U.S. ——, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). Certainly *Hudson* does not establish that the interior of one's body is as open to invasion as the interior of one's cell.

■ To say that convicts retain rights under the fourth amendment does not decide any concrete case, however. Rights of all kinds are much diminished in prison—and the right to be free of unwelcome medical procedures has an uncertain scope even for persons suspected but not yet convicted of crime. All the fourth amendment requires is that searches and seizures be reasonable, and although the existence of a warrant sometimes is essential to reasonableness, *Sparks* does not suggest that medical procedures within prisons must be preceded by judicial approval. But if doctors must reach their own conclusions about reasonableness, then the lack of clear substantive rules precludes an award of damages. Until the right in question has been "clearly established," courts do not demand that public officials dig into their pockets. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Officials performing discretionary functions are immune from damages liability "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987), citing *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). See also *Hunter v. Bryant*, 502 U.S. 224, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991); *Rakovich v. Wade*, 850 F.2d 1180, 1208–09 (7th Cir. 1988) (en banc).

■ The district court recognized that the use of a catheter is similar to a body-cavity search. These have uniformly been held to be consistent with constitutional norms when conducted within prisons. Other analogies are possible. A catheter may be like a needle used to draw blood, a procedure held permissible in *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), or like a surgeon's knife, which, according to *Winston v. Lee*, 470 U.S. 753, 105 S.Ct. 1611, 84 L.Ed.2d 662 (1985), cannot be used to extract unimportant evidence from the body. A catheter is more intrusive than a needle but less intrusive than a scalpel, making it hard to classify the procedure under an objective reasonableness inquiry. The existence of such line-drawing problems calls for immunity; the rule should be established prospectively rather than at the expense of public employees who predict the development of the law incorrectly. See

*Feldman v. Bahn,* 12 F.3d 730 (7th Cir.1993); *Walsh v. Ward,* 991 F.2d 1344 (7th Cir.1993); *Greenberg v. Kmetko,* 922 F.2d 382 (7th Cir. 1991). Although the district court held that it would have been more reasonable for the defendants to wait for natural urination, immunity does not depend on "whether another reasonable, or more reasonable" course of action was available. *Hunter,* 502 U.S. at 228, 112 S.Ct. at 537. See also *Wolfish,* 441 U.S. at 559 n. 40, 99 S.Ct. at 1885 n. 40 (holding as a substantive matter that the fourth amendment does not require the use of "less intrusive [yet] equally effective alternatives to [body] cavity inspections."). Sparks may have been lying when he said that he could not urinate, and although the prison may have been entitled to equate failure to provide a prompt sample with a confession of drug use, it did not have to do so; quick identification of the drug and its level in the body may serve vital purposes beyond setting the stage for punishment. Legal uncertainty surrounding the use of invasive medical procedures in prison entitles these defendants to immunity.

Uncertainty surrounding the application of the fourth amendment would not block inquiry based on the cruel and unusual punishments clause of the eighth. A person who engages in "calculated harassment unrelated to prison needs" cannot contend that legal uncertainty thwarted him from making the correct judgment. The eighth amendment's mental-state requirement, rather than doctrines of immunity, supplies protection for honest errors. But Sparks cannot take advantage of this possibility. He raised an eighth amendment argument early in the case but abandoned it and does not now argue that the defendants acted with the mental state required to violate that provision. Accordingly, the judgment is

REVERSED.