753 A.2d 132 (2000)
332 N.J. Super. 169
David A. JIOSI, Plaintiff-Appellant,
v.
TOWNSHIP OF NUTLEY, Township of Nutley Police Department, Mountainside Hospital, Frank Juhasz, M.D., Ruth Callender, R.N., Robin Radedagel, R.N., Officer Frank Beard, Officer Anthony Iannicelli, Sergeant George Quigg, and Sergeant Strumulo, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued May 23, 2000.
Decided June 20, 2000.
*134 Michael Wiseberg, River Edge, for plaintiff-appellant.
Michael A. Graham, Montclair, for defendants-respondents Township of Nutley, Township of Nutley Police Department, Officer Frank Beard, Officer Anthony Iannicelli, Sergeant George Quigg and Sergeant Strumulo (Garrity, Graham, Favetta & Flinn, attorneys; Mr. Graham, of counsel; Jane Garrity Glass on the brief).
Judith A. Deer, for respondents Mountainside Hospital, Ruth Callender, R.N. and Robin Radedagel, R.N. (Hurley & Vasios, Short Hills, attorneys; Ms. Deer, on the brief).
Brian Corrigan, for defendant-respondent Frank Juhasz, M.D. (Corrigan & Foster, attorneys; Albert L. Foster, II, on the letter relying on the brief of respondent Mountainside Hospital).
Before Judges PRESSLER, KIMMELMAN and CIANCIA.
*133 The opinion of the court was delivered by CIANCIA, J.A.D.
Plaintiff David A. Jiosi was arrested and charged with driving under the influence of a controlled dangerous substance. The police took him to defendant Mountainside Hospital where blood was drawn for testing with plaintiff's permission. Plaintiff was then involuntarily catheterized so that a urine sample could be extracted. Plaintiff sued the hospital, two of its nurses and Dr. Frank Juhasz on theories of battery and negligence, among others. He also sued the Township of Nutley, the Nutley Police Department and four of its police officers pursuant to 42 U.S.C.A. § 1983.
Two summary judgment motions were heard by different judges. The first motion resulted in summary judgment in favor of defendants Mountainside Hospital, its nurses and Dr. Juhasz, on the theory that they were entitled to immunity pursuant to N.J.S.A. 2A:62A-10. That statutes provides in part:
a. When acting in response to a request of a law enforcement officer, any physician, nurse or medical technician who withdraws or otherwise obtains, in a medically accepted manner, a specimen of breath, blood, urine or other bodily substance and delivers it to a law enforcement officer, shall be immune from civil or criminal liability for so acting, provided the skill and care exercised is that ordinarily required and exercised by others in the profession.
b. Any physician, nurse or medical technician who, for an accepted medical purpose, withdraws or otherwise obtains, in a medically accepted manner, a specimen of breath, blood, urine or other bodily substance and subsequently delivers it to a law enforcement officer either voluntarily or upon court order, shall be immune from civil or criminal liability for so acting, provided the skill and care exercised in obtaining the specimen is that ordinarily required and exercised by others in the profession.
c. The immunity from civil or criminal liability provided in subsections a. and b. of this section shall extend to the hospital or other medical facility on whose premises or under whose auspices the specimens are obtained, provided the skill, care and facilities provided are those ordinarily so provided by similar medical facilities.
The second summary judgment motion resulted in dismissal of plaintiff's claims against the Township of Nutley, the Township Police Department and the named police officers. The substantive reasons for that judgment were that plaintiff's constitutional rights had not been violated and, in any event, the police officers were "likely" entitled to qualified immunity.
We are satisfied that summary judgment was improperly granted except as to the Township of Nutley, the Nutley Police Department and police Sergeants Quigg and Strumulo. On a motion for summary judgment the initial question is whether *135 there is a genuine issue of material fact. R. 4:46-2(c). The determination of that question requires the motion judge to consider, "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational fact finder to resolve the alleged dispute in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of America, 142 N.J. 520, 523, 666 A.2d 146 (1995).
Viewing the competent evidential materials in a light most favorable to Jiosi, a reasonable fact finder could reach the following conclusions.[1] On April 23, 1993, plaintiff's erratic driving caused him to be arrested and charged with operating a vehicle while under the influence. Because there was no smell of alcohol on his breath he was suspected of being under the influence of drugs. He was taken to the police station and read his Miranda[2] rights. At the direction of Sergeant Strumulo, Jiosi was taken to Mountainside Hospital for a blood test by Officers Beard and Iannicelli. The blood was to be tested for drugs at the State Police lab. They arrived at the hospital shortly after midnight and the police officers explained the circumstances. As one nurse stated in her deposition, "[t]hey said this patient was under arrest and they needed to get blood sample." They did not request a urine test and it was not police policy to obtain a urine sample under these circumstances. Plaintiff's blood was drawn within a half-hour of his arrival at the hospital. After the blood was drawn a doctor told Officer Beard that it was the hospital's policy to take a urine sample in addition to a blood sample when screening for drugs. The reason for the policy was that the hospital laboratory only tested blood for a limited number of substances and a urine test was more extensive. Plaintiff agreed to provide a urine sample but was unable to do so. He was handcuffed in the bathroom and given five to ten glasses of water to drink over approximately a half-hour.
While waiting for plaintiff to provide a urine sample, the police were told by a nurse that a catheter would be used if plaintiff did not voluntarily produce a sample. The catheterization was ordered by Dr. Juhasz. Officer Beard called the police station and told Sergeant Quigg that the hospital wanted to take a urine sample. Beard did not mention catheterization. Quigg told Beard it was okay to go ahead and have a urine sample taken. It was "not even a ten-second call." Beard then relayed Quigg's approval to hospital personnel.
Plaintiff was told by one of the police officers that if he did not urinate he would be catheterized. At that point plaintiff asked to call his lawyer but the request was not granted. A nurse wiggled a catheter tube at plaintiff and told him if he did not "pee within the next two minutes" that was what he was going to get. What he got was described by plaintiff in his deposition testimony:
The police come through the bathroom door, uncuffed me from the bar, restrained me, I think they even cuffed me behind my back, with an orderly and doctor there present and the nurse and they dragged me and half carried me and restrained me onto the table and then proceeded with the catheterization when I was fighting and kicking the whole way.
According to hospital records, plaintiff was catheterized at 1:26 a.m., one hour and sixteen minutes after being brought to the hospital and about forty-six minutes after *136 plaintiff first was given water to help him urinate.

Immunity Under N.J.S.A. 2A:62A-10
The purpose of N.J.S.A. 2A:62A-10 is to encourage medical personnel to cooperate with law enforcement officers in obtaining bodily substance specimens. Senate Law, Public Safety and Defense Committee, Statement to S. 1089 (enacted as L.1986, c. 189). It does not provide immunity under all circumstances. The sample must be requested by a law enforcement officer or, alternatively, it must have been obtained for an accepted medical purpose. In either case a sample must be obtained in a medically accepted manner.
On the proofs here presented, a reasonable fact finder could conclude that the police did not want, nor request, a urine sample from plaintiff. The idea was initiated by hospital personnel not in an effort to comply with a police request, but by virtue of a hospital policy requiring both blood and urine samples. This policy was established due to the limitations of the hospital laboratory in evaluating blood samples for drugs, a limitation not shared by the State Police laboratory where plaintiff's blood was tested. It was not until after plaintiff's blood was drawn that the police officers were told that a urine sample was needed. At that point Officer Beard called Sergeant Quigg and received approval for a urine sample to be taken but without informing Quigg that plaintiff would be catheterized.
If a jury accepted this version of the facts it could properly conclude that the urine sample was taken because of hospital policy not in response to a request from the police. That the police eventually went along with the forced catheterization does not alter the primary reason for the procedure. It is interesting that at the second summary judgment hearing where the focus was on the municipal defendants, the motion judge found that "[Dr.] Juhasz ordered the plaintiff to be catheterized and Nurse Seiber performed the procedure.... This was done after the nurse and doctor informed the officers that this was standard hospital procedure. So technically the police officers were not instrumental in that process."
Subsection b. of N.J.S.A. 2A:62A-10 is not implicated in the present case. The urine sample was not extracted for a medical purpose. There was no intent to treat the defendant or to diagnose him in anticipation of treatment. The sole purpose was to determine whether there was evidence that plaintiff had operated a motor vehicle while under the influence of drugs.
We believe, however, that an additional fact question was raised as to whether the urine was obtained in a medically acceptable manner. In our view it is not enough to demonstrate that the procedure can be accomplished without harm to the "patient." Under the present circumstances where the sample is being taken, not for an accepted medical purpose but to further a criminal prosecution, constitutional rights of privacy are implicated "[b]ecause it is clear that the collection and testing of urine intrudes upon the expectations of privacy that society has long recognized as reasonable ... these intrusions must be deemed searches under the Fourth Amendment." Skinner v. Railway Labor Executives' Assoc., 489 U.S. 602, 617, 109 S.Ct. 1402, 1413, 103 L.Ed.2d 639, 660 (1989). In this context the question of whether the procedure was done in a "medically accepted manner" entails more than the mechanics of the procedure. It must also encompass the question of whether the procedure was necessary for its intended purpose. The record before the motion judge was not fully developed in this regard, but on the proofs provided a jury could find that the period of time plaintiff was given to voluntarily urinate was insufficient to justify involuntary catheterization. The time lapse between plaintiff's last glass of water and the involuntary catheterization may have been as little as sixteen minutes. *137 Overall, the time between when plaintiff began taking water and the catheterization was only around forty-six minutes. What problems might have arisen by allowing plaintiff more time to voluntarily urinate were not explored at the summary judgment hearing.
For these reasons we believe that material questions of fact existed which should have precluded summary judgment in favor of Mountainside Hospital, Dr. Juhasz and the named nurses.

The Municipal Defendants
The summary judgment granted in favor of the Township of Nutley, the Nutley Police Department and Sergeants Quigg and Strumulo stands on a different footing. Their liability was premised upon 42 U.S.C.A. § 1983. There was no demonstration during either summary judgment hearing that catheterization was a custom or policy of the municipal entities. Indeed, the evidence was that urine samples were not even requested under these circumstances, much less obtained involuntarily. Moreover, there is no respondeat superior or vicarious liability under 42 U.S.C.A. § 1983. City of Canton, Ohio v. Harris, 489 U.S. 378, 385, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412, 424 (1989). The Township and the municipal police department were therefore properly dismissed. Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037-2038, 56 L.Ed.2d 611, 638 (1978).
Sergeant Strumulo's only part in all of this was to direct Officers Beard and Iannicelli to take plaintiff to Mountainside Hospital for a blood sample. Sergeant Quigg, on the evidence presented, never knew about the proposed catheterization but only approved the hospital's request for a urine sample, as that request was related to him over the phone by Officer Beard. Thus there was no showing that these sergeants in their supervisory capacities failed to supervise or did so with recklessness or deliberate indifference. Schneider v. Simonini, 163 N.J. 336, 370-374, 749 A.2d 336 (2000). Strumulo and Quigg were properly dismissed from the litigation.
Officers Beard and Iannicelli, however, were acting under color of state law when one or both apparently agreed to, and assisted in, the involuntary catheterization of plaintiff. The removal of urine, as with the removal of blood, is an intrusive process protected by the Fourth Amendment. Skinner, supra, 489 U.S. at 617, 109 S.Ct. at 1413, 103 L.Ed.2d at 660; Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). It is a search for which a warrant is required unless certain exigent circumstances exist that permit a warrantless search. Under Schmerber, supra, a warrantless, involuntary seizure of bodily fluid is justified when there is probable cause to arrest, probable cause to believe that evidence of a crime will be revealed by the search, articulable and demonstrable exigent circumstances to justify not seeking a warrant, and the specimen is taken in a medically reasonable manner. State v. O'Loughlin, 270 N.J.Super. 472, 637 A.2d 553 (App.Div.1994). As the physical intrusion moves from the simple to the more elaborate, from the less to the more intrusive, we also consider the nature of the crime, the relevance of the evidence sought, the degree of risk to the person undergoing the procedure and the magnitude of the intrusion upon the dignity, privacy and bodily integrity of the individual. Winston v. Lee, 470 U.S. 753, 105 S.Ct. 1611, 84 L.Ed.2d 662 (1985) (no compelling need shown to remove a bullet from suspect's chest in light of other available evidence); State v. Lawson, 187 N.J.Super. 25, 28-29, 453 A.2d 556 (App.Div.1982) (judicial support sought for the surgical removal of a bullet from suspect's thigh).
Whether exigent circumstances exist is "`highly fact sensitive.'" State v. Alvarez, 238 N.J.Super. 560, 568-569, 570 A.2d 459 (App.Div.1990) (quoting State v. Lewis, 116 *138 N.J. 477, 487, 561 A.2d 1153 (1989)). In the present case there appears to be no dispute that probable cause existed to arrest plaintiff and for the police to believe that a search of his person, i.e., a blood sample, would reveal evidence of drugs. But the United States Supreme Court in Schmerber, supra, did not provide a carte blanche exception to the warrant requirement whenever there is probable cause to believe a suspect is under the influence of alcohol or drugs:
It bears repeating, however, that we reach this judgment only on the facts of the present record. The integrity of an individual's person is a cherished value of our society. That we today hold that the Constitution does not forbid the States['] minor intrusions into an individual's body under stringently limited circumstances in no way indicates that it permits more substantial intrusions, or intrusions under other conditions.
[Schmerber, supra, 384 U.S. at 772, 86 S.Ct. at 1836, 16 L.Ed.2d at 920(emphasis added).]
Indicative of the fact-sensitive nature of bodily intrusions by the State is Rochin v. California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952). There defendant swallowed pills that the police sought as evidence. Rochin was taken to a nearby hospital where a doctor pumped his stomach. In holding that such police action violated due process, Justice Frankfurter expressed the opinion that the police:
[Did] more than offend some fastidious squeamishness or private sentimentalism about combating crime too energetically. This is conduct that shocks the conscience. Illegally breaking into the privacy of the petitioner, the struggle to open his mouth and remove what was there, the forceable extraction of his stomach's contentsthis course of proceeding by agents of the government to obtain evidence is bound to offend even hardened sensibilities. They are methods too close to the rack and the screw to permit constitutional differentiation.
[342 U.S. at 172, 72 S.Ct. at 209-210, 96 L.Ed. at 190.]
Here, plaintiff consented to give blood and apparently to give urine, but he did not consent to the catheterization procedure. The police did not originally seek a urine sample, apparently believing that a blood analysis would be sufficient. The hospital policy of taking a urine sample was born not out of any medical emergency, but apparently out of the limitations of its own laboratory in analyzing blood samples, a limitation not shared by the State Police laboratory where plaintiff's blood was taken for testing. Whether there was a legitimate police need for a urine sample and whether it had to be obtained involuntarily at the time it was taken, are questions that were not fully explored at the second summary judgment motion.
We pause here to note that some, perhaps most, of the factual proofs presented by plaintiff to the judge who heard the first summary judgment motion were apparently not before the judge who heard the second summary judgment motion. Plaintiff's attorney assumed the same judge would hear both motions and did not resubmit the proofs. Counsel's efforts to explain his mistaken belief and rectify the situation were cut short by the motion judge. As a result, the judge on the second motion not only granted summary judgment to the municipal defendants on substantive grounds, but also on "procedural" grounds, i.e., the absence of plaintiff's supporting proofs. We express our strong disapproval of this method of disposition. Upon realization of the deficiency, plaintiff should have been given the opportunity to resubmit the proofs from the first motion so that the second motion could have been properly considered. Not only was the procedural disposition of the summary judgment motion inappropriate, but we fail to see how a substantive ruling could have been properly made on such an incomplete record. Oral argument did not substitute for the missing proofs because the motion judge conducted the hearing in *139 a manner that prevented any meaningful argument. The entire hearing is encompassed in twenty pages of transcript, about half of which is the judge's opinion. In light of the fact-sensitive nature of the exigent circumstances requirement, the standards applicable to summary judgment motions, and the manner in which the second summary judgment motion was heard, we are satisfied that the judgment in favor of Officers Beard and Iannicelli was not warranted.
As to the officers' claims of qualified immunity, such a defense must be analyzed in terms of whether clearly established law was violated and whether a reasonable person in the officers' position would have known that clearly established rights were being violated. Schneider, supra, 163 N.J. at 353-354, 749 A.2d 336 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396, 410 (1982)). It is an affirmative defense that the defendant must establish. Schneider, supra, 163 N.J. at 354, 749 A.2d 336 (citing Gomez v. Toledo, 446 U.S. 635, 640-641, 100 S.Ct. 1920, 1923-1924, 64 L.Ed.2d 572, 577-578 (1980)).
The municipal defendants rely on State v. Malik, 221 N.J.Super. 114, 534 A.2d 27 (App.Div.1987), apparently in support of their claim that clearly established law justified the catheterization of plaintiff. We find significant differences between Malik and the present case. In Malik defendant was a passenger in a vehicle stopped by the police. Her physical appearance and the contents of her pocketbook led the arresting officer to believe she was under the influence of drugs. At police headquarters she was "directed... to give a urine sample when she stated that she required the use of the ladies room. Accompanied by a female matron, defendant complied." Id. at 117, 534 A.2d 27. We upheld the constitutionality of the police action upon the dual findings that exigent circumstances justified the police demand for a urine specimen and the seizure was incidental to a valid arrest.
As to the exigent circumstances, the police in Malik "might reasonably" have believed that evidence would be lost unless prompt investigative action was taken. Id. at 119, 534 A.2d 27 (quoting Schmerber, supra, 384 U.S. at 770-771, 86 S.Ct. at 1835, 16 L.Ed.2d at 919-920). In the present case, the police did not seek a urine sample in the first instance, had a blood sample in hand before catheterization, and planned on taking the blood sample to the State Police lab, which they apparently, and correctly, believed was capable of analyzing the blood for whatever substances plaintiff had ingested. Moreover, there was no indication the police reasonably believed evidence would be lost if plaintiff did not give a urine sample, much less that it would be lost if plaintiff was not involuntarily catheterized without additional delay.
The "incident to arrest" justification in Malik and that decision's rejection of defendant's claim that the seizure constituted an unwarranted invasion of her bodily integrity, are distinguishable by the nature of the seizure in the present case. If plaintiff had given urine in response to a police request, Malik would be on point. The difference between requiring a urine sample that is then given and the taking of a urine sample through involuntary catheterization would appear manifest. It is one thing to await excretion of contraband and quite another to invade the person by going in after it. See Rochin v. California, supra. While it may well be that Malik is relevant in exploring the question of what Officers Beard and Iannicelli knew or should have known when they participated in the involuntary catheterization, it is nevertheless distinguishable on its facts from the present case.
The police defendants also rely on Sparks v. Stutler, 71 F.3d 259 (7 Cir.1995), cert. denied, 519 U.S. 948, 117 S.Ct. 357, 136 L.Ed.2d 249 (1996), to support their contention that the law regarding forced catheterization was in their favor or at *140 least not clearly against them. In Sparks, a prison inmate suspected of drug use was subject to an involuntary catheterization. The Court of Appeals said that a catheter is more intrusive than a needle used to draw blood and less intrusive than a scalpel used to cut and extract evidence. Therefore, use of a catheter is hard to classify "under an objective reasonableness inquiry." Id. at 261. In finding in favor of immunity, however, the Court focused on the uncertainties surrounding an inmate's diminished Fourth Amendment rights. Id. at 261-262. The Court was also concerned with the maintenance of prison authority. Contrary to the conclusion of the motion judge in the present case, Sparks does not support a finding that constitutional rights had not been violated but only that immunity existed from the consequences of such a violation, on the facts there presented. Again, in this fact-sensitive area, different circumstances can be very significant. We cannot help but emphasize that on the present record there is virtually no expression from police Officers Beard and Iannicelli that they believed there was an exigent need for a urine sample obtained by involuntary catheterization.
Allowing for the possibility that defendants Beard and Iannicelli violated clearly established law, an issue we believe that must be informed by a proper factual record, in order to avail themselves of qualified immunity the officers must prove that they "neither knew nor should have known of the relevant legal standard...." Harlow, supra, 457 U.S. at 819, 102 S.Ct. at 2738, 73 L.Ed.2d at 411. The question of whether a reasonable police officer could believe that his conduct was lawful is an objective question but nevertheless fact specific. Schneider, supra, 163 N.J. at 355, 749 A.2d 336 (quoting Anderson v. Creighton, 483 U.S. 635, 641, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523, 532 (1987)).
The present matter is complicated further because Beard and Iannicelli may not stand on the same footing. There are indications that Iannicelli was significantly less experienced in these matters than Beard. If he was junior to Beard and taking direction from Beard he may have arguments separate and apart from those available to Beard.[3]
Although immunity is a legal issue to be decided by the court at the earliest possible stage of litigation, Schneider, supra, 163 N.J. at 356, 749 A.2d 336, the relevant issues are often fact-sensitive and disputed facts may require jury determination before the court can make the controlling legal determination. Id. at 360-361, 749 A.2d 336. The "traditional Brill summary judgment procedure [has been] ... modified to accommodate the special needs of Section 1983 cases in order to comply with federal decisional law." Ibid. In light of this and the inadequate record at the second motion for summary judgment, we cannot decide the legal issues concerning whether Officers Beard and Iannicelli were entitled to qualified immunity.
The summary judgments in favor of Mountainside Hospital, its nurses named as defendants, Dr. Frank Juhasz, and Officers Beard and Iannicelli are reversed. The summary judgments in favor of the Township of Nutley, the Nutley Police Department and Sergeants Quigg and Strumulo are affirmed.
The matter is remanded for further proceedings consistent with this opinion.
NOTES
[1] As subsequently discussed, the proofs before the judge on the second summary judgment motion were significantly less than those presented on the first summary judgment motion. Our recitation is based primarily on the proofs presented at the first motion.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694(1966).
[3] In this regard defense counsel should consider whether the same attorney can represent both Beard and Iannicelli.